UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                   :

| | | |
|---|---|---|
| TRUSTEES OF THE PAVERS AND ROAD | : | |
| BUILDERS DISTRICT COUNCIL | : | REPORT AND |
| WELFARE, PENSION, AND ANNUITY | : | RECOMMENDATION |
| FUNDS and TRUSTEES OF THE LOCAL | : | |
| 1010 APPRENTICESHIP, SKILL | : | 1:22-CV-5053 (FB) (PK) |
| IMPROVEMENT AND TRAINING FUND, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| -against- | : | |
| | : | |
| USA ROOFING COMPANY CORP., | : | |
| | : | |
| Defendant. | : | |

-------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

       Trustees of the Pavers and Road Builders District Council Welfare, Pension, and Annuity Funds and Trustees of the Local 1010 Apprenticeship, Skill Improvement and Training Funds ("Trustees" or "Plaintiffs") brought this action against USA Roofing Company Corp. ("USA Roofing" or "Defendant") pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, *et seq.* (*See* "Compl.," Dkt. 1.) Plaintiffs moved for default judgment against Defendant. (*See* "Motion," Dkt. 13; Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment ("Pls. Mem."), Dkt. 18.)

       The Honorable Frederic Block referred the Motion to the undersigned for a report and recommendation. For the reasons stated herein, I respectfully recommend that the Motion be granted.

## BACKGROUND

### I.     Factual Background

The following allegations are taken from the Complaint, the Declaration of Keith Loscalzo ("Loscalzo Decl.," Dkt. 14), the Declaration of Joseph Montelle ("Montelle Decl.," Dkt. 15), the Declaration of Philip Wilson ("Wilson Decl.," Dkt. 16), the Declaration of Adrianna R. Grancio ("Grancio Decl.," Dkt. 17), the Supplemental Declaration of Joseph Montelle ("Montelle Suppl. Decl.," Dkt. 20), the Supplemental Declaration of Philip Wilson ("Wilson Suppl. Decl.," Dkt. 21), the Supplemental Declaration of Adrianna Grancio ("Grancio Suppl. Decl.," Dkt. 22) the Second Supplemental Declaration of Philip Wilson ("Second Wilson Suppl. Decl.," Dkt. 24), the Second Supplemental Declaration of Adrianna Grancio ("Second Grancio Suppl. Decl.," Dkt. 25) and the exhibits attached thereto, and are accepted as true for purposes of the Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in its favor).

Plaintiffs are trustees of jointly administered, multi-employer labor management trust funds organized and operated under the LMRA. (Compl. ¶ 4.)  The trust funds are the Union, Pavers & Road Builders District Council Welfare Fund ("Welfare Fund"), Pavers & Road Builders District Council Pension Fund ("Pension Fund"), Pavers & Road Builders District Council Annuity Fund ("Annuity Fund"), and the Local 1010 Apprenticeship, Skill Improvement and Training Fund ("Training Fund") (collectively, the "Funds").  (Agreement Between Local Union 1010 and the Employer July 1, 2018 – June 30, 2021 ("2018-2021 CBA") art. IX, §§ 1(a)-(b), Ex. A to the Loscalzo Decl., Dkt. 14-1; Agreement Between Local Union 1010 and the Employer July 1, 2021 – June 30, 2024 ("2021-2024 CBA") art. IX, §§ 1(a)-(b), Ex. B to the Loscalzo Decl., Dkt. 14-2.)  The Funds are employee benefit plans under 29 U.S.C. § 1002(3) (*see* Compl. ¶ 4) and multi-employer plans under 29 U.S.C. § 1002(37).  (2018-2021 CBA art. II; 2021-2024 CBA art. II.)

Defendant is a company engaged in the construction business. (Compl. ¶ 5.) It is incorporated under the laws of the State of New York and has its principal place of business in Brooklyn, New York. (*Id.*) It is an employer as defined in 29 U.S.C. § 1002(5), and an employer in an industry affecting commerce within the meaning of 29 U.S.C. § 142. (*Id.*)

Plaintiffs and Defendant entered into a collective bargaining agreement on July 1, 2018 for an initial period through June 30, 2021. (Loscalzo Decl. ¶ 10; *see* 2018-2021 CBA.) The 2018-2021 CBA provides that the agreement automatically renews annually after June 30, 2021, or unless a party to the agreement serves written notice of termination or proposed changes. (Loscalzo Decl. ¶ 6; 2018-2021 CBA art. XVIII.) USA Roofing did not serve written notice of termination and continued to submit remittance reports to the Funds beyond June 30, 2021. (Loscalzo Decl. ¶¶ 7-9.) Thus, USA Roofing remained bound to the CBA in a new effective period from July 1, 2021 through June 30, 2024. (Loscalzo Decl. ¶ 10; *see* 2021-2024 CBA.) The 2018-2021 CBA and the 2021-2024 CBA (collectively, the "CBAs") span three different benefit rate periods: from July 1, 2018 through June 30, 2022, when the benefit rate was $48.50, from July 1, 2022 through June 30, 2024, when the benefit rate was $50.19, and from July 1, 2023 through June 30, 2024, when the benefit rate is $51.87. (CBAs art. IX, Sec. 1(b); Rate Sheets, Ex. H to Montelle Decl. at 1-2 (all references to ECF pagination), Dkt. 15-6; Montelle Suppl. Decl. ¶ 16.) At all relevant times, USA Roofing was bound to the CBAs. (*See* CBAs.)

## II.    Collective Bargaining Agreement Between Defendant and the Union

Pursuant to the CBAs, Defendant was required to remit contributions and dues check offs to the Funds for each hour of covered work performed by Defendant's employees. (Compl. ¶ 11; Loscalzo Decl. ¶¶ 14, 17; CBAs art. IX §§ 1, 4.) Under the terms of the CBA, all contributions are due no later than 35 days after the work was performed. (Compl. ¶ 12; Loscalzo Decl. ¶ 15; CBAs art. IX §§ 1(b)-(c).)

Defendant was also required to submit remittance reports detailing the number of hours

worked by Union members on or before the 35th day following the close of the month in which the hours were worked.  (Compl. ¶ 13; Loscalzo Decl. ¶ 16; CBAs art. IX § 1(c).)

### III.    Trust Agreements and Collection Policy for Delinquent Employers

The CBAs incorporate the terms and conditions of the various Agreements and Declarations of Trust creating the Welfare Fund, Pension Fund, Training Fund, and Annuity Fund (together, the "Trust Agreements").  (Montelle Decl. ¶ 5-6; Pavers and Road Builders District Council Annuity Fund Plan ("Annuity Fund Trust Agreement"), Ex. D to the Montelle Decl. at 1-40 (all references to ECF pagination), Dkt. 15-2; Amended and Restated Agreement and Declaration of Trust of the Pavers and Road Builders District Council Pension Fund ("Pension Fund Trust Agreement"), Ex. D to the Montelle Decl. at 41-61, Dkt. 15-2; Amended and Restated Agreement and Declaration of Trust of the Pavers and Road Builders District Council Welfare Fund ("Welfare Fund Trust Agreement"), Ex. D to the Montelle Decl. at 62-82, Dkt. 15-2; Agreement and Declaration of Trust Local 1010 Apprenticeship, Skill Improvement, and Training Fund ("Training Fund Trust Agreement"), Ex. D to the Montelle Decl. at 83-115, Dkt. 15-2.)

Pursuant to the Trust Agreements, the Trustees promulgated a Collection Policy.  (Montelle Decl. ¶ 8; *see* Collection Policy, Ex. E to the Montelle Decl.)  Under the Collection Policy, if an employer fails to pay contributions when due, the employer is liable to the Funds for payment of the delinquent contributions, plus interest on the amount of the unpaid contributions at an annual rate of ten percent (10%), liquidated damages in the amount of ten percent (10%) of the contributions determined to be due and owing, and costs and attorneys' fees.  (Compl. ¶ 16-18, Loscalzo Decl. ¶ 20; CBAs art. IX § 5; Collection Policy art. II § 5.)  If an employer is two or more months delinquent in making contributions and has not submitted remittance reports detailing the number of hours worked by its employees, the Funds may estimate the amount of the delinquency by calculating the greater of the average of the monthly payments based on reports actually submitted by the employer for the last

three months for which payments and reports were submitted, or the average of the monthly payments based on reports actually submitted by the employer for the last twelve months for which payments and reports were submitted (the "Estimation Protocol"). (Compl. ¶ 15; Collection Policy art. IV § 9.) In the event the Funds are required to employ an attorney to collect delinquent benefit contributions, the employer is obligated to pay the Funds' reasonable attorneys' fees. (Compl. ¶ 17; CBAs art. IX § 5; Pension Fund Trust Agreement art. VII § 9(d); Welfare Fund Trust Agreement art. VII § 9(d).)

Plaintiffs engage the services of a third-party administrator, Zenith American Solutions Inc. ("Zenith"), to monitor employers' payments of required benefit contributions and union assessments, remittance reports detailing the number of hours worked, and late payment interest. (Wilson Decl. ¶¶ 6-7.) Zenith prepares reports documenting over- and underpayments. (*Id.* ¶ 7.)

## IV.    Defendant's Failure to Pay Contributions

Zenith determined that Defendant failed to remit monthly contributions and union assessments totaling $95,989.34 for the periods April 2021 and June through December 2021. (Compl. ¶ 21; Wilson Decl. ¶¶ 9-10; Employer Discrepancy Status Report ("Discrepancy Report"), Ex. K to the Wilson Decl., Dkt. 16-1.) Although Defendant submitted remittance reports to the Funds detailing the number of hours of covered work performed by its employees for the periods April 2021 and June through December 2021, it failed to remit corresponding contributions as required by the CBAs. (Montelle Decl. ¶ 13; Wilson Decl. ¶ 9; *see* Discrepancy Report.)

In the Complaint, Plaintiffs state that Defendant failed to submit remittance reports detailing the number of hours of covered work performed by its employees for the period January 2022 through June 2022. (Compl. ¶ 22.) In the Motion, Plaintiffs state that Defendants failed to submit remittance reports for the period of January 2022 through September 2022, and sought damages for unpaid contributions extending through September 2022. (Wilson Decl. ¶ 12; Pls. Mem. at 15-16; *see* No Reports Received Report ("Hourly Remittance Report"), Ex. 6 to the Wilson Suppl. Decl., Dkt. 21-

2.)  In their supplemental filings, Plaintiffs state that Defendants have continued to fail to submit remittance reports through July 2023.  (Montelle Suppl. Decl. ¶ 9; Wilson Suppl. Decl. ¶ 12.)

Additionally, Zenith determined that Defendant's payments of contributions to the Funds for the months of July 2019, December 2019, and March 2021 were not timely, and therefore, interest was due for these three late payments.  (Montelle Decl. ¶ 39; Wilson Decl. ¶ 18; Employer LD/IC Billing Status Report ("Interest Status Report"), Ex. M to the Wilson Decl., Dkt. 16-3.)  At some point between November 28, 2022 and September 11, 2023, the late payment interest associated with December 2019 was paid and allocated and, therefore, satisfied.  (Second Grancio Suppl. Decl. ¶¶ 4-5; Second Wilson Suppl. Decl. ¶ 6.)

## V.  Procedural Background

Plaintiffs filed the Complaint on August 25, 2022.  (Dkt. 1.)  Plaintiffs served a copy of the Summons and Complaint on Defendant on August 26, 2022 through the New York Secretary of State, consistent with N.Y. Bus. Corp. Law § 306(b).  (Dkt. 8.)  After Defendants failed to answer or otherwise appear in this case, Plaintiffs requested a certificate of default on September 19, 2022, which the Clerk granted on October 6, 2022.  (Dkts. 9, 11.)  Plaintiffs filed the Motion on November 28, 2022.  (Dkt. 13.)

On August 23, 2023, the Court granted Plaintiffs leave to supplement the Motion with updated damages calculations, which Plaintiffs did on September 5, 2023.  (*See* Montelle Suppl. Decl.; Wilson Suppl. Decl.; Grancio Suppl. Decl.)

## DISCUSSION

## I.  Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment.  First, when a defendant "has failed to plead or otherwise defend," the Clerk of

Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2).

A defendant's default does not entitle a plaintiff "to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). To establish entitlement to default judgment, the plaintiff must demonstrate proper service of the summons and complaint. *See Advanced Capital Commercial Group, Inc. v. Suarez*, 09-cv-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The Court "may first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotations and alterations omitted). And Plaintiffs must establish compliance with the procedural requirements of Local Civ. R. 55.2(c).

On a defendant's default, the court must determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84. "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, 18-cv-06476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established and the amount of money potentially involved." *Klideris v. Trattoria El Greco*, 10-cv-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II.    Jurisdiction

### A.  Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiffs' ERISA claim pursuant to 29 U.S.C. § 1132(e)-(f) and 28 U.S.C. § 1331.  The Court has original jurisdiction over Plaintiffs' allegations relating to breach of labor contract pursuant to 29 U.S.C. § 185(a) and 28 U.S.C. § 1331 of the LMRA.

### B.  Service on the Defendant

Plaintiffs properly served Defendant by delivering and leaving a copy of the Summons and Complaint with the New York Secretary of State.  See N.Y. Bus. Corp. L. § 306(b)(1); Fed R. Civ. P. 4(h)(1)(B).  (Dkt. 13, Dkt. 17-4.)  Service on Defendant was therefore proper.

### C.  Personal Jurisdiction

New York state has general jurisdiction over corporations formed under its laws and operating within the state.  See Francis v. Ideal Masonry, Inc., 16-cv-2839 (NGG) (PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), R&R adopted, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018).  Defendant is a New York corporation; the Court therefore has personal jurisdiction over Defendant.

## III.    Procedural Compliance with Local Civil Rules 7.1 and 55.2

Local Civil Rule 7.1(a) requires parties filing a motion to include a Notice of Motion, a Memorandum of Law, and, if necessary, supporting affidavits and exhibits.  Local Civil Rule 55.2(b) requires that an application for default judgment be accompanied by the Clerk's certificate of default, a copy of the complaint, and a proposed form of default judgment.  Local Civil Rule 55.2(c) requires proof of mailing of the entire application for default judgment to defendant.

Plaintiffs included a Notice of Motion (Dkt. 13), a Memorandum of Law (Dkt. 18), supporting affidavits and exhibits (Loscalzo Decl., Dkt. 14; Montelle Decl., Dkt. 15; Wilson Decl., Dkt. 16; Declaration of Adrianna R. Grancio ("Grancio Decl."), Dkt. 17), the Clerk's Certificate of Default (Ex. P to the Grancio Decl., Dkt. 17-3), a copy of the Complaint (Ex. N to the Grancio Decl., Dkt.

17-1), a proposed form of default judgment ("Proposed Judgment," Ex. S to the Grancio Decl., Dkt. 17-6), and proof of mailing to Defendant (Dkt. 19). Thus, Plaintiffs have demonstrated that they have met the procedural requirements for filing a motion for default judgment pursuant to Local Rule 7.1 and 55.2.

## IV.    Liability Under ERISA and the LMRA

Plaintiffs seek a default judgment against Defendant for unpaid benefit contributions pursuant to ERISA, 29 U.S.C. § 1145, and violations of the CBA as set forth in the LMRA, 29 U.S.C. § 185.

ERISA applies to "any employee benefit plan if it is established or maintained [] by any employer engaged in commerce or in any industry affecting commerce; or [] by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a). An employer is "any person acting directly as an employer … in relation to an employee benefit plan." 29 U.S.C. § 1002(5). An "employee benefit plan" is "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both…" 29 U.S.C. § 1002(3). A plan fiduciary includes persons with "any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

ERISA requires employers to "'maintain records with respect to each of his employees sufficient to determine the benefits due' [under an employee benefit plan] and to make records 'available for examination.'" *Annuity, Welfare, & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Getty Contracting, LLC*, 18-CV-1450 (CBA), 2018 WL 7076168, at *3 (E.D.N.Y. Oct. 5, 2018), *R&R adopted*, 2018 WL 7076162 (E.D.N.Y. Dec. 12, 2018) (quoting 29 U.S.C. §§ 1027, 1059(a)(1)). ERISA further requires that

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Plan fiduciaries may bring a civil action for ERISA violations and/or for violations of a collective bargaining agreement. 29 U.S.C. § 1132(a)(3).

Here, Plaintiffs are employer and employee trustees of a "multiemployer plan" as defined by ERISA. (Compl. ¶ 4.) The Funds are employee benefit plans as defined by Section 3(3) of ERISA, 29 U.S.C. § 1002(3). (*Id.* ¶ 4.) The Union is a "labor organization" within the meaning of the LMRA. (*Id.* ¶ 6.) Defendant is an employer because it has entered into an agreement to participate in the plans. (CBAs art. II.) The CBAs, the Trust Agreements, and the Collection Policy all require Defendant to timely remit contributions and submit reports detailing the number of hours of covered work performed by its employees. (CBAs art. IX § 1(c).) Defendant has not remitted contributions or union assessments for the periods of April 2021 and June through December 2021; has not submitted reports detailing the number of covered hours worked for the period of January through June 2022 (as of the time of the Complaint); and did not timely remit contributions for July 2019 and March 2021, thereby incurring late payment interest for those months. (Compl. ¶¶ 21-24.) These allegations are sufficient to establish Defendant's liability under ERISA.

The LMRA grants "a federal cause of action for 'violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce.'" *Int'l Union of Operating Engineers LLC*, 2018 WL 7076168, at *3 (quoting 29 U.S.C. § 185(a)). Plaintiffs allege that Defendant failed to timely remit contributions in violation of the terms of the CBAs. Plaintiffs have, therefore, established Defendant's liability under the LMRA.

**V.    Damages**

Pursuant to Section 502(g)(2) of ERISA, where a "judgment in favor of the plan is awarded" under ERISA Section 515, a plaintiff is entitled to an award of: "1) the amount of unpaid contributions; 2) interest on the unpaid contributions; 3) liquidated damages; 4) reasonable attorney's fees and costs, and 5) such other legal and equitable relief as the court deems appropriate." *Lanzafame*

*v. Toquir Contracting, Inc.*, 545 F. Supp. 2d 255, 258 (E.D.N.Y. 2007); 29 U.S.C. 1132(g)(2); *see Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir. 1995); *Mason Tenders Dist. Council Welfare Fund v. LJC Dismantling Corp.*, 400 F. Supp. 3d 7, 23 (S.D.N.Y. 2019); *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 121 (E.D.N.Y. 2013).

Plaintiffs request a judgment in the amount of unpaid contributions and union assessments, plus ten percent interest on the unpaid contributions and the late payments, and liquidated damages consisting of ten percent of the unpaid contributions, as well as reasonable attorneys' fees and costs incurred in enforcing the CBA, the Trust Agreements, and the Collection Policy.  (Pls. Mem. at 15-16.)

Although "a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. On a motion for default judgment, Plaintiffs bear the burden of presenting proof of damages. *See CIT Bank, N.A. v. Dambra*, No. 14-CV-3951 (SLT) (VMS), 2015 WL 7422348, at *5 (E.D.N.Y. Sept. 25, 2015), *R&R adopted*, 2015 WL 7430006 (E.D.N.Y. Nov. 20, 2015).  To reach a conclusion as to damages, the Court relies on documentary evidence and detailed affidavits. *See Action S.A. v. Marc Rich & Co. Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).  The amount of damages awarded, if any, must be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

### A.    *Unpaid Contributions for Months with Submitted Reports*

Based on the monthly reports submitted to the Funds by Defendant, Plaintiffs determined that Defendant failed to remit contributions of **$91,410.84** and union assessments of **$4,578.50** to the Funds for the periods April 2021 and June 2021 through December 2021.  (Compl. ¶ 21; Wilson Decl. ¶¶ 9-10; Wilson Suppl. Decl. ¶¶ 9-10; Discrepancy Report.)  Plaintiffs submitted their calculations of

the amount owed based on the hours of covered work reported and rates specified in the CBAs and Trust Agreements. (Wilson Decl. ¶¶ 9-10; Wilson Suppl. Decl. ¶¶ 9-10; Discrepancy Report.)

Accordingly, I respectfully recommend that Plaintiffs be awarded **$95,989.34** in unpaid contributions for these months for which Defendant submitted reports.

### B.    *Unpaid Contributions for Months Without Submitted Reports*

Plaintiffs seek damages for the period of January 2022 through July 2023 in which Defendant did not submit monthly remittance reports. (Compl. ¶¶ 22, 30; Montelle Decl. ¶ 15; Montelle Suppl. Decl. ¶¶ 8-9; Wilson Decl. ¶ 12; Wilson Suppl. Decl. ¶ 12 *see* Hourly Remittance Report.)

Federal Rule of Civil Procedure 54(c) generally limits recovery in a default judgment to what is demanded in the pleadings. In an ERISA action, however, "a district court has discretion to award ERISA damages that accrue during the pendency of an action." *Ames v. STAT Fire Suppression*, Inc., 227 F.R.D. 361, 362 (E.D.N.Y. 2005). A court may award "damages that accrued during the pendency of the litigation if the complaint put defendant on notice that plaintiff might seek such damages." *Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 282 (E.D.N.Y. 2010) (awarding unpaid contributions that became due after the suit was filed because "the complaint includes a request for unpaid contributions that might become due and owing during the litigation.")

In the Complaint, Plaintiffs not only alleged that Defendant failed to submit reports from January 2022 to June 2022, but they also sought "any additional delinquent benefit contributions interest thereon, liquidated damages, and attorneys' fees determined to be due according to the CBA for any months that are unpaid as of the date judgment is entered and thereafter," putting Defendant on notice that Plaintiffs might seek unpaid contributions, interest, and liquidated damages accrued after the Complaint was filed. (Compl. at 9 (ECF pagination).) Accordingly, I calculate unpaid contributions for months in which remittance reports were not submitted for the period of January 2022 through July 2023.

When an employer fails to submit remittance reports, the Funds calculate the unpaid contribution obligation for delinquent months using the Estimation Protocol described in the Collection Policy. Pursuant to the Collection Policy, Plaintiffs are entitled to estimate Defendant's unpaid contributions as the greater of the average of the last three months for which Defendant submitted payments and remittance reports, or the last 12 months. (Collection Policy, art. IV § 9.)

Here, the last three months in which Defendant submitted payments and remittance reports are May 2021, March 2021, and March 2020. (Montelle Decl. ¶ 18; Remittance Reports.) Defendant submitted $20,259.33 in contributions and union assessments in May 2021, $4,786.00 in March 2021, and $9,313.26 in March 2020. The average of the last three payments and reports submitted by Defendant is, thus, **$11,452.86**. (Montelle Decl. ¶ 21; Estimation Worksheet.)

To calculate the average number of hours worked per month during the delinquent period, the contribution obligation is divided by the total benefit rate applicable to that period. (Montelle Decl. ¶ 22.) Here, Defendant's delinquency spans three different benefit rate periods. (*See* Rate Sheet at 1-2.) The total benefit rate from July 1, 2021 to June 30, 2022 was $48.51, the total benefit rate from July 1, 2022 to June 30, 2023 was $50.19, and the total benefit rate for July 2023 was $51.87. (*Id.*; Montelle Suppl. Decl. ¶ 19.) The average number of hours for each month of Defendant's delinquency from January 2022 through June 2022 is 236.09 hours ($11,452.86/$48.51 = 236.09 hours), from July 2022 through September 2022 is 228.19 hours ($11,452.86/$50.19 = 228.19 hours), and for July 2023 is 220.8 hours ($11,452.86/$51,87 = 220.8). (Estimation Worksheet; Rate Sheet; Montelle Suppl. Decl. ¶ 19.)

The estimated contribution owed for each month that Defendant did not submit a report is calculated by multiplying the average number of hours of covered work per month by the benefit rate in effect during that month. The estimated contributions and union assessments owed are as follows:

| Time Period | Estimated Monthly Hours | Monthly Benefits Rate | Estimated Monthly Benefits Due | No. Of Months in Period | Total Estimated Benefits Due in Period |
|---|---|---|---|---|---|
| Jan. 2022-June 2022 | 236.09 | $48.51 | Fund: $11,015.96 | 6 | Fund: $66,095.76 |
| | | | Union: $436.77 | | Union: $2,620.62 |
| July 2022-June 2023 | 228.19 | $50.19 | Fund: $11,030.70 | 12 | Fund: $132,368.40 |
| | | | Union: $422.15 | | Union: $5,065.80 |
| July 2023 | 220.8 | $41.87 | Fund: $11,000.26 | 1 | Fund: $11,000.26 |
| | | | Union: $452.64 | | Union: $452.64 |

(*See* Ex. 3 to the Montelle Suppl. Decl., Dkt. 20-3.)

The total amount of unpaid contributions due to the Funds is $209,464.42. The total amount of union assessments due is $8,139.06.

Accordingly, I respectfully recommend that Plaintiffs be awarded **$217,603.48** in unpaid contributions and union assessments for the period of January 2022 through July 2023.

### C.    *Interest*

Plaintiffs seek interest on unpaid contributions at a rate of ten percent per year pursuant to the CBAs, from the date that each contribution was due through the date of judgment. (Montelle Decl. ¶¶ 31-38; Montelle Suppl. Decl. ¶¶ 33-40; CBAs art. II § 4; Interest and Liquidated Damage Calculations, Ex. 4 to the Montelle Suppl. Decl., Dkt. 20-4; Revised Proposed Judgment, Ex. 10 to the Grancio Suppl. Decl., Dkt. 22-3.)

The following table sets forth the interest owed on each delinquent contribution through September 5, 2023, the date that Plaintiffs filed their supplemental submissions:

| Month of Work | Due Date | Delinquent Contributions (excluding union assessments) | Daily Interest | Days Late (as of Sept. 5, 2023) | Total Interest |
|---|---|---|---|---|---|
| Apr. 30, 2021 | June 4, 2021 | $25,715.24 | $7.05 | 823 | $5,802.15 |
| June 30, 2021 | Aug. 4, 2021 | $13,996.32 | $3.83 | 762 | $2,918.46 |
| July 31, 2021 | Sept. 4, 2021 | $19,597.20 | $5.37 | 731 | $3,925.47 |
| Aug. 31, 2021 | Oct. 5, 2021 | $4,852.64 | $1.33 | 700 | $931.00 |
| Sept. 30, 2021 | Nov. 4, 2021 | $746.56 | $0.20 | 670 | $134.00 |
| Oct. 31, 2021 | Dec. 5, 2021 | $6,719.04 | $1.84 | 639 | $1,175.76 |
| Nov. 30, 2021 | Jan. 4, 2022 | $4,852.64 | $1.33 | 609 | $809.97 |
| Dec. 31, 2021 | Feb. 4, 2022 | $14,931.20 | $4.09 | 578 | $2,364.02 |
| Jan. 31, 2022 | Mar. 7, 2022 | $11,015.96 | $3.02 | 547 | $1,651.94 |
| Feb. 28, 2022 | April 4, 2022 | $11,015.96 | $3.02 | 519 | $1,567.38 |
| Mar. 31, 2022 | May 5, 2022 | $11,015.96 | $3.02 | 488 | $1,473.76 |
| Apr. 30, 2022 | June 4, 2022 | $11,015.96 | $3.02 | 458 | $1,383.16 |
| May 31, 2022 | July 5, 2022 | $11,015.96 | $3.02 | 427 | $1,289.54 |
| June 30, 2022 | Aug. 4, 2022 | $11,015.96 | $3.02 | 397 | $1,198.94 |
| July 31, 2022 | Sept. 4, 2022 | $11,030.70 | $3.02 | 366 | $1,105.32 |
| Aug. 31, 2022 | Oct. 5, 2022 | $11,030.70 | $3.02 | 335 | $1,011.70 |
| Sept. 30, 2022 | Nov. 4, 2022 | $11,030.70 | $3.02 | 305 | $921.10 |
| Oct. 31, 2022 | Dec. 5, 2022 | $11,030.70 | $3.02 | 274 | $827.48 |
| Nov. 30, 2022 | Jan. 4, 2022 | $11,030.70 | $3.02 | 244 | $736.88 |
| Dec. 31, 2022 | Feb. 4, 2022 | $11,030.70 | $3.02 | 213 | $643.26 |
| Jan. 31, 2023 | Mar. 7, 2023 | $11,030.70 | $3.02 | 182 | $549.64 |
| Feb. 28, 2023 | Apr. 4, 2023 | $11,030.70 | $3.02 | 154 | $465.08 |
| Mar. 31, 2023 | May 5, 2023 | $11,030.70 | $3.02 | 123 | $371.46 |
| Apr. 30, 2023 | June 4, 2023 | $11,030.70 | $3.02 | 93 | $280.86 |
| May 31, 2023 | July 5, 2023 | $11,030.70 | $3.02 | 62 | $187.24 |
| June 30, 2023 | Aug. 4, 2023 | $11,030.70 | $3.02 | 32 | $96.64 |
| July 31, 2023 | Sept. 4, 2023 | $11,000.26 | $3.01 | 1 | $3.01 |
| Total | | $300,875.26 | $82.41 | | $33,825.22 |

The combined daily interest rate for all unpaid contributions is **$82.41.**

Accordingly, I respectfully recommend that Plaintiffs be awarded **$33,825.22** in interest through September 5, 2023, and interest at a daily rate of **$82.41** from September 6 through the date of judgment.

### D.   Late Payment Interest

Plaintiffs seek ten percent interest on late payments for the months July 2019 and March 2021 in the amount of $80.34.  (Compl. ¶ 36; Wilson Suppl. Decl. ¶ 21; Second Grancio Suppl. Decl. ¶¶ 4-5; Second Wilson Suppl. Decl. ¶ 6.)

Pursuant to the Collection Policy, an employer owes interest for delinquent contributions at a rate of ten percent per year.  (Collection Policy art. II § 5.)  Plaintiffs provided documentation substantiating the amounts of the late payments, the dates they were paid, and the interest due on each.  (Late Payment Interest Report, Ex. 1 to the Second Wilson Supp. Decl., Dkt. 24-1.)

Accordingly, the undersigned recommends that Plaintiffs be awarded **$80.34** in late payment interest.

### E.   Liquidated Damages

Pursuant to the CBA and the Collection Policy, Plaintiffs are entitled to liquidated damages of ten percent of the unpaid contributions, excluding unpaid union assessments.  (CBA Art. IX sec. 5(c); Collection Policy Art. II § 5.)  Total unpaid contributions, not including union assessments, amount to $300,875.26; ten percent of that is $30,087.53.

I, therefore, respectfully recommend that Plaintiffs be awarded **$30,087.53 in liquidated damages.**

### F.   Post-Judgment Interest

Post-judgment interest is mandatory. *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004); *see* 28 U.S.C. § 1961(a) (post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court" and "shall be calculated from the date of the entry of the judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield … for the calendar week preceding the date of judgment."); *Lamaka v. Russian Desserts Inc.*, No. 18-CV-7354 (ILG)(VMS), 2021 WL 2188280, at *18 (E.D.N.Y. Feb. 12, 2021), *R&R adopted*, 2021 WL 2184870

(E.D.N.Y. May 28, 2021) (awarding post-judgment interest despite plaintiff's failure to request it). Accordingly, the undersigned recommends that Plaintiffs be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### G.      Attorney's Fees and Costs

Plaintiffs seek to recover attorneys' fees and costs to date.  (Compl. ¶ 37.)  ERISA provides for a discretionary award of attorneys' fees and costs for any violation of the statute.  29 U.S.C. § 1132(g)(1).  The Collection Policy, which is incorporated into the CBAs, provides for attorneys' fees and costs associated with collection and enforcement efforts.  (CBAs art. IX § 5; Collection Policy arts. I–II.)

District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request. *Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *18 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016). Courts must "us[e] their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009) (quotation and citation omitted).

"[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quotation in original); *see also Scharff v. City of Nassau*, 10-CV-4208 (DRH) (GRB), 2016 WL 3166848, at *3 (E.D.N.Y. May 20, 2016), *R&R adopted*, 2016 WL 3172798 (E.D.N.Y. June 6, 2016) (quoting *Millea*, 658 F.3d at 166).  To calculate the lodestar, the Court determines a reasonable hourly rate and a reasonable number of hours. *See Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 203 (E.D.N.Y. 2006).

Plaintiffs seek $5,482.75 in attorneys' fees and expenses.  (Grancio Suppl. Decl. ¶ 12(b).)

### 1.  Hourly Rate

To determine a reasonable hourly rate, the Court considers "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation."  *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotations omitted).  The "community" is the "district in which the reviewing court sits."  *Scharff*, 2016 WL 3166848, at *4 (quoting *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011)).  "The reasonable hourly rate is the rate a paying client would be willing to pay ... bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).  The Court must also "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate."  *Id.* at 190 (emphasis in original).  Those factors include the attorney's experience and expertise.  *See Brady*, 455 F. Supp. 2d at 204; *Chen v. Cty. of Suffolk*, 927 F. Supp. 2d 58, 71 (E.D.N.Y. 2013).  The fee applicant has the burden of justifying the requested rate as reasonable.  *See Scharff*, 2016 WL 3166848, at *4.

In recent years, Courts in this district have awarded fees in ERISA cases at an hourly rate of $300 to $350 for partners, $200 to $300 for associates, and up to $150 for non-attorney support staff.  *See UFCW Local 174 Pension Fund v. 5600 Mkt. Corp.*, 17-CV-5789 (CBA) (CLP), 2018 WL 4403394, at *9 (E.D.N.Y. Aug. 16, 2018), *R&R adopted as modified*, 2018 WL 4388452 (E.D.N.Y. Sept. 14, 2018) (collecting cases); *Gesualdi v. Magnolia P R O Trucking Inc.*, No. 11-CV-1482 (ADS) (AKT), 2014 WL 859865, at *13 (E.D.N.Y. Mar. 4, 2014) (finding the $100 per hour rate charged by paralegals reasonable); *New York Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*, 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (finding paralegal fee of $150 per hour reasonable.)

Plaintiffs seek fees for attorney Adrianna R. Grancio ("Grancio") and legal assistants Eva Keating ("Keating") and Abigail Frankel ("Frankel"). (Grancio Decl. ¶ 10.)

Grancio graduated from law school in 2016 and is an associate at Virginia & Ambinder, LLP ("V&A"). (Grancio Decl. ¶ 10.) Her time is billed at a rate of $290 per hour. (*Id.*) This rate falls within the range of rates awarded to associates in ERISA actions, and I find that it is reasonable.

Keating and Frankel are legal assistants, and their time is billed at a rate of $115 per hour. (*Id.*) This rate is also within the range of rates awarded to support staff in ERISA actions, and I find that it is reasonable.

### 2. Hours Billed

When calculating the lodestar, "the district court should exclude excessive, redundant or otherwise unnecessary hours...." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Courts routinely reduce requested fee awards when attorneys perform tasks like "review[ing] electronic orders and case management orders, [and] fil[ing] documents on ECF . . . [which] should [be] conducted by a paralegal." *Callari v. Blackman Plumbing Supply, Inc.*, 11-CV-3655 (ADS) (AKT), 2020 WL 2771008 at *12 (E.D.N.Y. May 4, 2020), *R&R adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020). "[T]he court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Id.* (internal quotations omitted).

Plaintiffs' counsel spent a total of 20.90 hours in this matter. (Grancio Decl. ¶ 13; Contemporaneous Time Records, Ex. Q to the Grancio Decl, Dkt. 17-4; Grancio Suppl. Decl. ¶ 9; Revised Contemporaneous Time Records, Ex. 8 to the Grancio Suppl. Dec, Dkt. 22-1.) Upon examination of the time records, the undersigned does not find counsel's billed hours to be excessive, redundant, or unnecessary. Counsel have, however, billed one duplicate entry, listing .5 hours of work done in connection with a "certificate of default issue" on October 6, 2022. (Revised

Contemporaneous Time Records at 4.)  Because this entry is duplicative, the Court subtracts the $145.00 billed.

The hourly rates and number of hours billed are otherwise reasonable.  Accordingly, I respectfully recommend that Plaintiffs be awarded **$4,831.00** in attorneys' fees.

### 3.  Costs

Plaintiffs request $506.75 in costs for the filing fee ($402.00), service of process ($75.00), and postage for serving court documents on Defendant ($0.57, $1.92, $17.14, and $9.55). (Contemporaneous Time Records at 4-5; Revised Contemporaneous Time Records at 4-5.)

The undersigned takes judicial notice of the filing fee. *See Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85 (ILG)(SJB), 2019 WL 885930, at *6 (E.D.N.Y. Feb. 22, 2019).

Plaintiffs submitted an invoice documenting the service of process fee.  (Service Invoice, Ex. R to the Grancio Decl., Dkt. 17-5.)  Although Plaintiffs did not submit receipts or invoices for postage, the contemporaneous billing records show that on August 30, 2022, September 20, 2022, and November 15, 2022, copies of court documents were served on Defendant.  (*See* Contemporaneous Time Records.)  This is sufficient to support postage costs. *Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, & Skill Improvement & Safety Funds v. Kel-Tech Constr. Inc.*, No. 19-CV-2487-ENV-SJB, 2020 WL 6051097, at *10 (E.D.N.Y. Aug. 25, 2020)

In light of the documentation, I respectfully recommend that Plaintiffs be awarded costs of **$506.75**.

### **CONCLUSION**

Based on the foregoing, I respectfully recommend that the Motion be granted.  I respectfully recommend that Plaintiffs be awarded the following damages:

- **$95,989.34** in delinquent contributions and union assessments for months with remittance reports;

- **$217,603.48** in delinquent contributions and union assessments for months without remittance reports;

- **$33,825.22** in interest through September 5, 2023, and interest at a rate of **$82.41** per day from September 6, 2023 through the date of judgment;

- **$30,087.53** in liquidated damages;

- **$80.34** in late payment interest;

- **$5,337.75** in attorneys' fees and expenses; and

- Post-judgment interest calculated at the statutory rate.

For a total of **$382,923.66** in damages, plus additional interest as indicated above.

Plaintiffs are directed to serve this Report and Recommendation on Defendant forthwith and file proof of service on the docket by **September 14, 2023**. Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          September 12, 2023